**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KENNETH JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15 C 11140** |
| | ) | |
| **EXPERIAN INFORMATION** | ) | |
| **SOLUTIONS, INC., OCWEN LOAN** | ) | |
| **SERVICING, LLC, and RESIDENTIAL** | ) | |
| **CREDIT SOLUTIONS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Kenneth Jackson has sued Experian Information Solutions, Inc., Ocwen Loan Servicing, LLC, and Residential Credit Solutions, Inc. (RCS). Jackson alleges that Experian violated a provision of the Fair Credit Reporting Act (FCRA) applicable to credit reporting agencies, 15 U.S.C. § 1681i(a), and that Ocwen and RCS each violated a provision of the FCRA applicable to persons who furnish credit information to those agencies, 15 U.S.C. § 1681s–2(b). He has also asserted a claim against RCS for violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692e & 1692f. RCS has moved to dismiss Jackson's FCRA claim for failure to state a claim upon which relief may be granted. For the reasons stated below, the Court denies RCS's motion.

## Background

The Court takes the following facts from Jackson's complaint, accepting them as

true for purposes of the present motion.  *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014).  In November 2005, Jackson executed a note in the amount of $536,000 payable to IndyMac Bank Home Loan Servicing.  The loan was secured by a mortgage on residential property on Greenview Avenue in Chicago.  At some point after its origination, the mortgage loan began to be serviced by CitiMortgage.  Ocwen began to service the loan in or around November 2013, and RCS began to service the loan in or around June 2015.

Jackson defaulted on his loan, and in March 2013, he filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois.  The petition listed Jackson's mortgage loan as a secured pre-petition debt to IndyMac and listed Experian and CitiMortgage for noticing purposes.  The Bankruptcy Noticing Center accordingly served IndyMac, Experian, and CitiMortgage with notice of Jackson's bankruptcy filing.

In April 2013, Jackson filed his Chapter 13 plan.  The plan proposed special terms for discharging the debt he owed to IndyMac and CitiMortgage.  It provided: "Debtor is surrendering the real property located at 6607 N. Greenview Avenue, Chicago IL 60626-4217 to IndyMac Bank Home Loans and CitiMortgage, Inc., in full satisfaction of its claims." Pl.'s Ex. C, dkt. no. 1-3, at 6.  Jackson's modified plan, which he filed in June 2013, contained essentially the same term:  "Debtor is surrendering the real property located at 6607 N. Greenview Avenue, Chicago, Illinois 60626-4217 to IndyMac Bank Home Loans/OneWest Bank FSB and CitiMortgage, Inc., in full satisfaction of their claims." Pl.'s Ex. D, dkt. no. 1-4, at 6.  The bankruptcy court confirmed Jackson's modified plan that same month, and Jackson surrendered the

Greenview property. The bankruptcy court entered an order of discharge in December 2013, discharging all dischargeable debts—including Jackson's obligation under the mortgage loan—and prohibiting any future attempts to collect discharged debts from Jackson. The Bankruptcy Noticing Center served IndyMac, CitiMortgage, and Experian with the order of discharge on December 28, 2013.

Sometime after his debts were discharged in bankruptcy, Jackson obtained his Experian credit report. He discovered that Experian was still reporting his mortgage loan to be in default with a high balance. On October 27, 2015, he sent a letter to Experian disputing the lines on the report related to the mortgage loan. In the letter, he informed Experian that a bankruptcy court discharged the debt he owed on his mortgage loan in December 2013. He asked Experian to "[p]lease report a current balance and a monthly payment of '0'" on the trade lines for RCS, Ocwen, and another creditor. Pl.'s Ex. F, dkt. no. 1-6, at 2. He also asked Experian to "please report an accurate payment history on the accounts that have been discharged in my bankruptcy case." *Id.* He informed Experian that it should consider his letter a dispute and that it should activate its dispute resolution system and forward his letter to the creditors he listed.

On November 11, 2015, Experian notified Jackson that it had updated the Ocwen trade line, the RCS trade line, and five other credit items in response to his dispute letter. Experian's response showed each trade line in its updated format. The Ocwen trade line showed that the original amount of the debt was $536,000. It showed that the account's balance was "$0 as of January 2015." Pl.'s Ex. G, dkt. no. 107, at 8. It also showed that the debt's status was: "Discharged through Bankruptcy Chapter 13. This

item was updated from our processing of your dispute in Nov 2015." *Id.* Under

"Account History," it stated: "Debt included in Chapter 13 Bankruptcy on Dec. 26,

2013." *Id.* At the bottom of the Ocwen trade line, the following text appeared:

> Account history – If your creditor reported your account balances to us, we list them in this section as additional information about your account. Your balance history may also include your credit limit and high balance or the original loan amount for an installment loan. This section also includes the scheduled payment amounts, amounts actually paid and the dates those payments were made.

*Id.* Beneath this explanation, the line on the report for Ocwen indicated that Jackson

had an account balance of $503,474 and a scheduled monthly payment amount of

$3,640 every month from November 2013 through December 2014. The report

indicated that payments were received on a single date for June, July, August,

September, October, November, and December 2014 but that Experian had no data as

to the amount actually paid. For the months of November and December 2013 and

January through May 2014, the report included no data about the amount paid or about

whether any payments had been made at all.

The RCS trade line on the Experian report stated that the original amount owed

was $536,000. It showed that the account's balance was "$0 as of September 2015,"

and that the debt was "[d]ischarged through Bankruptcy Chapter 13. This item was

updated from our processing of your dispute in Nov 2015." *Id.* at 9. Under "Account

History," it stated: "Debt included in Chapter 13 Bankruptcy on Dec. 26, 2013." *Id.* At

the bottom of the RCS trade line, after the same explanation about additional account

history, the report indicated that the debt had a balance of over $537,000 in June, July,

and August 2015 and that it had a scheduled payment amount of $3,639 for each of

those months. *Id.* The report stated that payment was received for all three months on

a date in February, but there was no data on the amount actually paid.  *Id.*

Jackson alleges that Ocwen and RCS violated the FCRA by failing to investigate and correct the information they provided to Experian after receiving notice of discharge from the bankruptcy court and copies of the dispute letter he sent in October 2015.  He also alleges that Experian violated the FCRA by failing to adequately respond to his dispute letter and that RCS violated the FDCPA when it sent letters in April and September 2015 seeking to collect on debt that had been discharged by the bankruptcy court in December 2013.  All three defendants answered Jackson's complaint, but RCS moved to dismiss Jackson's FCRA claim for failure to state a claim in lieu answering that claim.

**Discussion**

When considering a motion to dismiss for failure to state a claim, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff.  *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).  To state a viable claim, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The FCRA imposes duties on persons who furnish credit information to credit reporting agencies (CRAs).  Under the FCRA, once a furnisher of credit information receives notice from a CRA that a consumer has disputed information the furnisher provided to the CRA, the furnisher is required to conduct a reasonable investigation and

report the results of that investigation to the CRA. *See* 15 U.S.C. §§ 1681i(a)(2), 1681s–2(b). To state a claim for a violation of section 1681s–2(b), a plaintiff must plausibly allege facts that, if proven, would show that (1) he notified a CRA that it was reporting inaccurate information; (2) the CRA relayed the plaintiff's claim to the information furnisher; and (3) the furnisher failed to investigate and correct the allegedly inaccurate information in question. *Id.*; *Westra v. Credit Control*, 409 F.3d 825, 827 (7th Cir. 2005). Courts have held that "inaccurate" information, for the purposes of a complaint under the FCRA, includes both factually incorrect information and information that creates a misleading impression. *See Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1004 (N.D. Ill. 2009) (citing *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998); *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011).

In count 2 of his complaint, Jackson alleges that RCS violated the FCRA because it failed to investigate the claim he made in his dispute letter and to fix the information he said was inaccurate. He acknowledges that after he sent his dispute letter to Experian, the RCS credit line stated that it had been updated in response to his dispute and showed that his account balance was $0 and his debt was "[d]ischarged through Bankruptcy Chapter 13." Pl.'s Ex. G, dkt. no. 1-7, at 9. But Jackson contends that RCS failed to rectify the inaccuracy of this credit item because it continued to include the account history and payment history.

RCS argues that Jackson's FCRA claim must be dismissed because it is not inaccurate to report the details of a debt that has been discharged in bankruptcy. To

support this contention, RCS directs the Court's attention to guidance from the Federal

Trade Commission (FTC) stating that a consumer report "may contain any information

that is complete, accurate, and not obsolete on the consumer who is the subject of the

report." 16 C.F.R. pt. 600 app'x § 607(b)(6) (2010). The FTC guidance goes on to state

that a "consumer report may include an account that was discharged in bankruptcy (as

well as the bankruptcy itself), as long as it reports a zero balance due to reflect the fact

that the consumer is no longer liable for the discharged debt." *Id.* Because it adjusted

its information to reflect that the debt was discharged in bankruptcy and the account

balance is zero, RCS says, it has acted in accordance with the FTC's guidance and thus

cannot be held liable for failing to delete the account history and payment history from

its credit line.

RCS makes no effort to explain why the Court should defer to the FTC's

guidance on this matter. Instead, it points the Court to a recent decision from the

Northern District of Indiana in which the court relied on the FTC's guidance in rejecting a

claim under section 1681–2(b). *See Dixon v. Green Tree Servicing, LLC*, No. 13 C 227,

2015 WL 2227741 (N.D. Ind. May 11, 2015). RCS has also cited as supplemental

authority a recently issued order in which another court in this district did the same. *See*

*Connor v. JP Morgan Chase Bank, N.A.*, No. 15 C 8601 (N.D. Ill. Mar. 22, 2016). For

his part, Jackson does not argue that the Court should not rely on or defer to the FTC's

guidance. Instead, he contends that the facts of *Dixon* are inapposite, and he has

submitted his own supplemental authority to combat RCS's. *See Asufrin v. Roundpoint*

*Mortg. Servicing Corp.*, No. 15 C 9077, 2016 WL 1056669 (N.D. Ill. Mar. 17, 2016).

Jackson is correct that *Dixon* is inapposite. In *Dixon*, the plaintiff filed for Chapter

7

7 bankruptcy.  Had he reaffirmed his mortgage debt, that debt essentially would have been omitted from the discharge of debts he received in his bankruptcy.  He chose not to reaffirm, so his mortgage debt was discharged.  In an effort to prevent his home from being repossessed, however, the plaintiff continued to make payments to the mortgage servicer.  When he obtained his credit report sometime after his debts were discharged, he discovered that although his account with the mortgage servicer showed a zero balance and was listed as discharged through bankruptcy, it did not indicate that he had continued to make payments even after the discharge.  *Dixon*, 2015 WL 2227741 at *1.  The court noted that "the FCRA doesn't provide any guidance on whether a furnisher has a duty to report post-discharge payments received," and it found that the FTC guidance cited in this case is "[t]he only guidance that is at all close" to assisting in resolving the question.  *Id.* at *4.

The court decided that section 1681s–2(b) does not impose upon a furnisher of credit information a duty to disclose payments made on a debt after that debt has been discharged.  Relying in part on the FTC's guidance, the court observed that it is not inaccurate or misleading to report a debt that has been discharged in bankruptcy so long as the report shows that the balance is zero and the debt has been discharged in bankruptcy.  In other words, the court found that a credit report does not need to provide more information to prevent such a disclosure from being misleading.  The court did not address whether including additional information (on top of the zero balance and statement of discharge) might make the entry incorrect or misleading.  In fact, the court mentioned in its opinion that one reason the furnisher had withheld information concerning the plaintiff's post-discharge payments was that it was concerned about the

impression such additional information might create in light of the bankruptcy stay in effect. *Id.* at *5.

The facts of *Connor* are closer to the facts of this case. In *Connor*, a plaintiff filed for bankruptcy under Chapter 13. Like Jackson, the plaintiff's bankruptcy plan provided that he would surrender property securing his mortgage in full satisfaction of the mortgage servicer's claims. Sometime after his mortgage debt was discharged, the plaintiff reviewed his credit report and discovered that the servicer was reporting his mortgage loan in default and with a high balance. The plaintiff alleged that he sent a dispute letter to the CRA from which he had pulled his credit report, and the CRA forwarded the letter to his mortgage servicer. The CRA soon notified him that the trade line related to his mortgage debt had been updated to show his bankruptcy discharge. When he checked his report again, he found that although page one of his report showed that his debt had been discharged, the trade line in question continued to report a "Scheduled Payment Amount" of $1,593 and an "Actual Payment Amount" of $1,592. *Connor*, No. 15 C 8601, slip op. at 1–2.

The court relied on the FTC's guidance and determined that the plaintiff failed to state a claim under section 1681s–2(b). The court explained:

> [T]he body of the report itself makes clear that both the balance amount and the amount past due are $0, which is . . . consistent with the FCRA. [Plaintiff] further contends that the trade line "gives the impression that Plaintiff is still making payments under the erroneously reported wage earner plan." However, [plaintiff] does not address the fact that the balance amount and amount past due are listed at $0 in his Response, which undermines his claim, and similarly does not allege that the reporting of the balance or past due amounts are inaccurate in violation of the FCPA [sic].

*Id.* at 3 (internal citations omitted). The court also found that the plaintiff in that case

had failed to properly plead a causal relationship between the defendant's alleged

FCRA violation and the harms he suffered.  *Id.* at 4.  For these reasons, the court

dismissed plaintiff's complaint for failure to state a claim.  *Id.* at 6.

Unlike the plaintiff in *Connor*, Jackson has addressed the fact that the revised

RCS credit line shows a zero balance amount and amount past due:  he argues that

"[t]he statement of a 2013 discharge, combined with 2015 account balances, create[s] a

picture of Plaintiff's credit history that is both inconsistent and incomplete given his

surrender of the property."  Pl.'s Resp., dkt. no. 37, at 4.

Without input from the parties, the Court is not prepared to decide whether it

should or must accord weight to the FTC's guidance and if so, how much.  Thankfully,

the Court need not answer that question at this juncture, because the FTC's guidance

does not require dismissal of Jackson's complaint.  The FTC has indicated that it is not

inaccurate to disclose a debt discharged in bankruptcy so long as a credit report

indicates a zero balance due.  It has explained that the reason the report must show a

zero balance due is that this reflects that the consumer is no longer liable for the debt.

But the Court sees nothing in the FTC's guidance that indicates that if a zero balance is

reported for a discharged debt, the report is accurate per se, no matter what or how

much additional true, false, or misleading information the report contains.  Even were

the Court to defer to the FTC's guidance, there would still be an open question

regarding whether additional information contained in a trade line that reported a

discharged debt with a zero balance made the trade line inaccurate.

Jackson has alleged that RCS failed to adequately correct the information it

furnished to Experian because even after he disputed the line, it contained information

that created the false impression that he was continuing to make payments years after the debt was discharged. This is sufficient to state a claim for relief under section 1681s–2(b). *See Asufrin*, 2016 WL 1056669 at *4.

### Conclusion

For the foregoing reasons, the Court denies RCS's motion to dismiss [dkt. no. 34] and directs RCS to answer Jackson's FCRA claim by no later than June 2, 2016.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 19, 2016