IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH JACKSON,<br><br>          Plaintiff,<br>     v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., OCWEN LOAN SERVICING, LLC, RESIDENTIAL CREDIT SOLUTIONS, INC.,<br><br>          Defendants. | Case No. 1:15-cv-11140<br><br>Hon. Matthew F. Kennelly |

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 11 MOTION FOR SANCTIONS**

Defendant Experian Information Solutions, Inc. ("Experian"), respectfully submits this Memorandum of Law in Support of its Rule 11 Motion for Sanctions against Plaintiff, Kenneth Jackson, and his counsel from Sulaiman Law Group.

**INTRODUCTION**

Plaintiff's Complaint alleges claims under the Fair Credit Reporting Act ("FCRA") against Experian related to the reporting of certain accounts discharged in Plaintiff's Chapter 13 bankruptcy. In the Complaint, Plaintiff and his attorneys from Sulaiman Law Group made material representations to this Court that have proven to be demonstrably false and, indeed, impossible. In particular, Plaintiff expressly alleged in the Complaint that he had been damaged by Experian's supposedly inaccurate credit reporting in the form of credit denials and emotional distress and anguish that flowed from those denials. In point of fact, discovery has revealed that at the time of filing the Complaint and making those allegations, Plaintiff had *not* been denied

*any* credit whatsoever, making the allegations impossible, obviously false, and a clear violation of Rule 11's proscriptions. To make matters worse, when asked about these allegations at deposition, Plaintiff admitted that the allegations were plainly false but that he did not know and could not recall if his attorneys even showed him a copy of the Complaint before it was filed. At this point in the deposition, Plaintiff's attorney interrupted the questioning and demanded to go off the record to take a bathroom break. During the break, counsel objected to the fact that Plaintiff was being questioned about these allegations, which counsel described as being "boilerplate" and a mere "technicality." But these "boilerplate" allegations are incredibly important and are anything other than a "technicality," as Plaintiff's claims could not have withstood a motion to dismiss without a credible allegation of actual damage. Here, even a cursory investigation prior to filing would have revealed that Plaintiff had not been denied credit and therefore had no actual damages to sustain an FCRA claim. Instead, Plaintiff's attorneys filed the Complaint without a hint of independent investigation, ignoring Rule 11's clear mandate to "think first and file later." *Stewart v. RCA Corp.*, 790 F.2d 624, 633 (7th Cir. 1986).

These misrepresentations were neither innocent nor harmless. The false allegation of damages allowed Plaintiff to avoid Rule 12 motions for lack of actual damages. As a result, this Court has expended considerable resources on, among other things, deciding a motion to dismiss, holding a settlement conference, and presiding over numerous status hearings. Similarly, Plaintiff and his attorneys have leveraged their false allegation into cut-your-losses settlements with the other defendants, while forcing Experian to incur the costs of defending a meritless lawsuit and proceeding with the deposition only to confirm that the lynchpin allegation of damage was made-up. This is precisely the type of harm Rule 11 was enacted to prevent. For these reasons, and as further explained below, Plaintiff and his attorneys have violated the

requirements of Rule 11 and this Court should dismiss this case as a sanction. In the alternative, this Court should award Experian its costs and attorneys' fees incurred since the filing of the Complaint (including attending status hearings, preparing for and taking the Plaintiff's deposition, and drafting this Motion), and impose all other appropriate sanctions, including requiring counsel to pay an amount equal to the amounts of the settlements reached in this case into a charitable fund.

## BACKGROUND

Plaintiff brought this action against Experian, a consumer reporting agency ("CRA"), alleging violations of the FCRA pursuant to 15 U.S.C. §1681. To state a prima facie claim under § 1681, a Plaintiff must allege that the reporting in question caused him actual damage. *See Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 608 (7th Cir. 2005); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Here, Plaintiff had indisputably not suffered any actual damage caused by Experian at the time the Complaint was filed. Nevertheless, to meet the requirements to state a cause of action under the FCRA, in paragraph 43 of his December 10, 2015 Complaint, Plaintiff falsely alleged:

> As a result of the conduct, actions, and inaction of Defendants, Plaintiff has suffered various types of damages as set forth herein including specifically, the loss of credit; the loss of the ability to purchase and benefit from a line of credit; the loss of time and other frustration and aggravation associated with writing dispute letters; time and money expended meeting with his attorneys; tracking the status of his disputes; monitoring his credit file; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials. (Compl. ¶ 43.)

Written discovery quickly revealed that Plaintiff's allegations of damage at the time of the filing were likely false. For example, in response to Interrogatory 7 of Experian's First Set of Interrogatories—which asked Plaintiff to identify "every application for credit or insurance . . .

during the past five years, including whether the application was granted or denied"—Plaintiff responded that he had suffered two credit denials, one on December 11, 2015 and another on December 13, 2015. *See* Ex. A, Plaintiff's Answers and Objections to Experian Information Solutions, Inc's First Set of Interrogatories, at 4.[1] Critically, both of these alleged denials *post-dated* Plaintiff's filing of the Complaint, making it factually impossible for Plaintiff to have suffered the damages alleged in paragraph 43 at the time he made the allegations.

At his deposition, Plaintiff confirmed that there were no other credit denials other than the two mentioned in his interrogatory responses. *See* Ex. B, Deposition Transcript of Plaintiff Kenneth Jackson, at 113:18-20. He then admitted that the portions of Paragraph 43 alleging both credit and emotional damages were false.

> Q. It true that at December 10, 2015 had you suffered any credit denials?
> A. Not that I am aware of.
> Q. And, therefore sir, you did not suffer any mental or emotional pain, anguish, humiliation, or embarrassment related to any credit denials, right?
> A. Correct.
> Q. So that portion of Paragraph 43 is inaccurate, correct?
> A. Correct

*Id.* at 117:8-18. Plaintiff also admitted that he could not recall if he was even given the opportunity to review the Complaint before it was filed. *Id.* at 12:16-13:21. ***Immediately***

---

[1] It is worth noting that these manufactured post-Complaint denials will not get Plaintiff over the Rule 56 hurdle in any event, as they were both denials for mainstream credit cards of the type that consumers with a recently filed bankruptcy are not qualified to receive. Indeed, the one denial letter produced by Plaintiff (he claims there was a second, though he has no evidence to that effect) expressly states that Plaintiff was denied because he had a recent bankruptcy—something that is indisputably accurate. *See* Exhibit C. It should surprise no one (and indeed did not surprise Plaintiff) that banks are not eager to provide credit to consumers who recently filed bankruptcy. Discovery has also revealed that Experian did not publish a single inaccurate credit report regarding Plaintiff to a third party, another prima facie requirement for an FCRA claim. The entire Complaint has proven frivolous to those willing to stay the course and not bow to the pressure of a quick settlement.

following his client's admission that the Complaint's allegations were false, Plaintiff's counsel demanded a break, claiming the need to use the facilities. *Id*. at 117:19-24. After going off the record, counsel turned to Plaintiff and asked if he too needed to use the facilities (hint, hint), but Plaintiff did not take the hint, and informed his lawyer that he was fine and did not need a break. (Wiers Dec. ¶ 4.) Plaintiff's counsel was thus in an awkward spot, as he had demanded a break that nobody actually wanted or needed, and his client was not providing an opportunity for a secluded sidebar. Experian's counsel then inquired if counsel was going to go actually use the facilities, or if the request was just a ruse to get off the record. (*Id*.) Plaintiff's counsel then stood up and proceeded to scold Experian's counsel in front of the witness about the line of questioning regarding the admittedly false damage allegation, admonishing that it was inappropriate to "harass" the witness with questions about "boilerplate" allegations, which were in counsel's view mere "technicalities," and demanding that counsel cease with that line of questioning. (*Id*.) He then left the room. (*Id.*)

Plaintiff's counsel was correct in his characterization of the critical damage allegation as being boilerplate. In the past year, Plaintiff's same law firm, the Sulaiman Law Group, has filed more than thirty lawsuits against Experian in the Northern District of Illinois alone. (*Id*. ¶ 5.) Of those thirty, *nearly all* include the exact same or very similar boilerplate allegation about credit denials and, according to the complaints, all of these plaintiffs remarkably suffered from the same supposed "emotional pain, anguish, embarrassment, and humiliation." (*Id*.) This is not some minor pleading quibble. To the contrary, discovery in these cases (including this one) is revealing time and again that the plaintiffs actually suffered no damages whatsoever, and that the allegations were false. To that end, Experian recently filed the first two of what will likely be numerous motions for summary judgment in response to these boilerplate complaints wherein it

argues, among other things, that the cases should be summarily dismissed for a failure to demonstrate actual damage. (*Id.* ¶ 6.) The memorandums in support of those motions are attached as Exhibits A and B to the Wiers Declaration.

Pursuant to Rule 11(c)(2), Experian served the accompanying Motion on Plaintiff on September 22, 2016. (*Id.* ¶ 7.); *see also* Ex. D. On October 12, 2016, Plaintiff's counsel acknowledged receipt of the Motion and, in a last minute attempt to keep their blatant misrepresentation from the Court, asked whether Experian would refrain from filing the motion if Plaintiff stipulated that the denials happened after the filing of the Complaint—something Experian already has proof of in the record. (*Id.*) Experian refused to withdraw the motion and indicated that dismissal of the Complaint (which has proven frivolous in any event) was the only acceptable remedy. (*Id.*)

## **LEGAL STANDARD**

Rule 11 provides, among other things, that "[b]y presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support . . . ." Fed. R. Civ. P 11(b). In other words, Rule 11 requires "adequate investigation before filing a complaint. It is not permissible to file suit and use discovery as the sole means of finding out whether you have a case." *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987). In clarifying the standard for adequate investigation, the Seventh Circuit has held that "[t]he amount of investigation required by Rule 11 depends on both the time available to investigate and on the probability that more investigation will turn up important evidence . . . ." *Id*.

Courts have held that this duty to investigate requires "that counsel not rely solely upon the allegations made by the client, but that they also conduct an independent inquiry into the facts. An attorney must investigate the relevant facts . . . to determine whether the facts support a recognized entitlement to relief." *Muraoka v. Am. Osteopathic Ass'n*, 117 F.R.D. 616, 618 (N.D. Ill. 1987) (citations omitted); *see also Szabo*, 823 F.2d. at 1083 ("Rule 11 requires independent inquiry."); *Jordan v. Brady*, No. 92 C 2229, 1993 WL 96127, at *2 (N.D. Ill. Apr. 1, 1993) ("Rule 11 requires . . . that an attorney conduct a reasonable, independent investigation into the facts of a case before filing a complaint.")

Moreover, whether an attorney's pre-filing investigation was reasonable under the circumstances is an "objective determination." *D'Aquino v. Citicorp/Diner's Club, Inc.*, 139 F.R.D. 357, 360 (N.D. Ill. 1991). "A sanctioned attorney's good faith is immaterial if his conduct was objectively unreasonable." *Id.*; *see also Noga v. Kimco Corp.*, No. 96 C 6108, 1997 WL 639233, at *3 (N.D. Ill. Oct. 7, 1997). Finally, if a court determines that an investigation was objectively unreasonable, "Rule 11 . . . by its terms *requires*-it does not merely permit-the district court to impose sanctions on a plaintiff who files a complaint without some minimum of previous investigation . . . ." *Shrock v. Altru Nurses Registry*, 810 F.2d 658, 661 (7th Cir. 1987) (emphasis added).

## ARGUMENT

The pre-filing investigation in this case with regard to whether Experian's reporting had caused Plaintiff damage—if there even was one—was woefully inadequate and objectively unreasonable, justifying sanctions against Plaintiff and his attorneys. First, the allegation of damage itself is so utterly lacking in factual foundation that any investigation, much less a reasonable one, would have revealed that it could not have been true and that no lawyer could in

good faith make it. Moreover, it is inconceivable that Plaintiff would not have known whether he had been denied credit and even more farfetched that he would have mistakenly believed that he suffered from "mental and emotional pain, anguish, humiliation, and embarrassment" caused by these hypothetical non-existent credit denials. Assuming Plaintiff did not knowingly lie to this Court, one can only conclude that his attorneys did not ask if the allegations were true before filing, conduct which fails to meet even a subjective standard of good faith, never mind a standard of objective reasonableness. What's more, Plaintiff's counsel's reference to "boilerplate" language and "technicalities," far from insulating their conduct, only further demonstrates the seriousness of this pattern of conduct. Plaintiff's "boilerplate" language regarding "technicalities" has cost this Court and the parties considerable resources. For the reasons described below, this Court should dismiss this case, award Experian attorney's fees, and impose all other appropriate sanctions.

**I.    PLAINTIFF'S ATTORNEYS FALSELY CERTIFIED THAT THEY CONDUCTED A REASONABLE INQUIRY INTO THE FACTS AND THAT THE FACTS HAD EVIDENTIARY SUPPORT.**

    **A.    The Allegations of Emotional Damage in Paragraph 43 Did Not Have Evidentiary Support.**

It is indisputable that Plaintiff's allegation of suffering "credit denials" and "mental and emotional pain, anguish, humiliation, and embarrassment of credit denials" did not have evidentiary support. Plaintiff filed his Complaint on December 10, 2015. His only credit denials in the past five years occurred on December 11, 2015 and, allegedly (for Plaintiff has no evidence of the second supposed denial), December 13, 2015. *See* Ex. A at 4, Ex. B at 113:18-20. Both denials were after Plaintiff filed his Complaint.[2] Consequently, at the time of filing, it

---

[2] Plaintiff will undoubtedly argue that because he received a denial letter the day after filing the Complaint, that the false claim is no big deal. Experian disagrees. Plaintiff's

was not factually possible for Plaintiff to have suffered any emotional damages from any credit denials, a fact Plaintiff confirmed at deposition before admitting those allegations were false. *Id.* at 117:8-18.

### B. Any Reasonable Inquiry Under the Circumstances Would Have Revealed the Allegations To Have No Evidentiary Support.

The Complaint's misrepresentation cannot be chalked up to a simple misunderstanding. It is facially implausible that Plaintiff would not have known that he had suffered no credit denials at the time he filed his Complaint. This is especially true where Plaintiff testified during his deposition that he actively monitored his credit. *See id.* at 28:15-20. Accordingly, Plaintiff and his counsel can hardly argue that they did not know these allegations were false when they filed the Complaint. Indeed, Plaintiff's attorneys need only have *asked* Plaintiff to know that these allegations were false. That Plaintiff's counsel filed the Complaint with these misrepresentations demonstrates that they either did not even ask Plaintiff whether he had suffered any emotional damage or credit denials before alleging in a federal lawsuit that he had (undoubtedly because they view it as a "technicality") or that they intentionally included a false allegation. This failure to conduct any investigation into the Complaint's factual circumstances is further underscored by Plaintiff's admission that he cannot recall whether he even had an opportunity to review the Complaint for accuracy before it was filed. *Id*. at 12:16-13:21.

---

allegation goes far beyond an innocent mistake. He alleged that inaccurate credit reporting caused Plaintiff to suffer "anguish" and "embarrassment" caused by "credit denials." Whether Plaintiff later did in fact receive a credit denial does not change the fact that an allegation claiming such severe emotional pain caused by something that had not yet happened is utterly false and an abuse of the litigation process. It demonstrates precisely how much importance Plaintiff's counsel places on the truth of such allegations, which appear over and over and over in counsel's boilerplate complaints.

Finally, Plaintiff's counsel's characterization of these allegations as "boilerplate" suggests that the allegations were written into the Complaint without any thought as to whether they were true or not. This is confirmed by counsel's statement that the allegations were mere "technicalities." This conduct is not only objectively unreasonable—meeting the requirements for a Rule 11 violation—but also plainly crosses the line into bad faith. *See N. Trust Co. v. Muller*, 616 F. Supp. 788, 789–90 (N.D. Ill. 1985) ("[A] lawyer engages in bad faith by acting recklessly or with indifference . . . .").

## II. THE COMPLAINT'S MISREPRESENTATIONS HAVE COST THE PARTIES AND THE COURT CONSIDERABLE RESOURCES.

### A. The Complaint's False Allegation of Damages Was Necessary for the Complaint to Survive Rule 12 Motions, Forcing Expensive Discovery and Extensive Judicial Involvement.

To state a valid claim under the FCRA, a plaintiff must plead that he suffered actual damages resulting from a consumer reporting agency's failure to comply with the act. Thus, the Complaint's false allegations, far from being harmless, were necessary to prop the Complaint up beyond the reach of Rule 12 motions. As a direct consequence of Plaintiff's false allegations, this Court has needlessly expended considerable resources on, amongst other things, deciding a motion to dismiss, holding a settlement conference, and presiding over numerous status hearings. Likewise, Experian has been forced to participate in expensive written and oral discovery while other defendants who do not have the same experience with Sulaiman plaintiffs and their lack of actual damages chose to simply cut their losses before expending resources on expensive discovery. While sanctions are appropriate even absent a finding of harm, the costs to the Court and the parties in this case provides additional justification for imposing sanctions and suggests that such sanctions should be strict to reflect the severity of the offense.

B.  **The False Allegations in this Case, Far From Being Anomalies, Are Part of a Pattern of Similar Allegations in Other Cases Brought by Plaintiff's Attorneys.**

This case is one of over 30 FCRA cases filed by Plaintiff's counsel, The Sulaiman Law Group, against Experian. True to Plaintiff's counsel's "boilerplate" characterization, nearly all of these cases include allegations that are the exact same or almost exactly the same as the allegation found in this one. This is laid out in detail in Paragraph 5 of the Wiers Declaration. Experian thus agrees with counsel that, unfortunately, Sulaiman Law Group treats these allegations as boilerplate, but strongly disagrees with counsel's position that the language is a mere technicality that matters not. As discussed above, these allegations are necessary to prop up the boilerplate Complaints beyond the reach of Rule 12 motions, and, given this pattern, are likely calculated to do so. Discovery has revealed, however, that nearly all of the cases filed by the Sulaiman Law Group against Experian (all of which involve consumers who recently filed for Chapter 13 bankruptcy) involve consumers who suffered no actual damage. Indeed, Experian recently filed the first two of what will likely be numerous motions for summary judgment in similar cases where discovery revealed no actual damages (or, for that matter, no inaccurate credit reports issued to third parties).[3] Thus, without the "boilerplate" allegations of damages, which has proven time and again to be false, many of these cases would fail at the outset.

---

[3] In those two cases, the first two of the boilerplate Sulaiman cases to have hit the summary judgment deadline on the schedule, discovery revealed that neither plaintiff *Pappas* nor plaintiff *Banno* had suffered any credit denials caused by any inaccurate reporting by Experian. (Wiers Dec. Ex. A at 15 and Ex. B at 13-15.) As to emotional distress, Plaintiff *Pappas* conceded at deposition that he was not making a claim for emotional distress, contrary to the allegations in his complaint (*Id.* Ex. B at 13), and the only supposed emotional distress plaintiff *Banno* was able to point to had not been caused by any inaccurate reporting on Experian's part, but rather was the result of being told incorrect things about the state of her Experian file and credit denials by her counsel from Sulaiman Law Group. (*Id.* Ex. A at 16.)

In this case, the allegation is demonstrably false and proves that Plaintiff's counsel conducted no investigation, let alone a reasonable one, into the allegation before including it in a federal lawsuit. Given "the essential purpose of Rule 11 [] to force attorneys to make inquiries before they file a paper in court," significant sanctions are warranted to deter Plaintiff's counsel from their pattern of reckless conduct. *Williams v. Balcor Pension Inv'rs*, No. 90 C 0726, 1995 WL 23061, at *1 (N.D. Ill. Jan. 17, 1995); *see also Brandt v. Schal Associates, Inc.*, 960 F.2d 640, 646 (7th Cir. 1992) ("[O]ne of the goals of Rule 11 is to impose costs on the careless or reckless lawyers.") (citation omitted) (alteration in original).

\* \* \* \*

There can be no reasonable dispute that Plaintiff and his counsel violated Rule 11 in this case. The pleading was admittedly and materially false, counsel was provided the required time to correct the falsity, but no correction was made. When Rule 11 is violated, a sanction is mandatory. *See* Fed. R. Civ. P. 11 ("the court, upon motion or its own initiative, *shall* impose … an appropriate sanction") (emphasis added); *Shrock*, 810 F.2d at 661 ("Rule 11 . . . by its terms requires-it does not merely permit-the district court to impose sanctions on a plaintiff who files a complaint without some minimum of previous investigation . . . ."). Thus, the real question this Court must confront is what sanction is appropriate.

Here, Experian posits that the most appropriate sanction is dismissal. Plaintiff's counsel has repeatedly shown a disinterest in making serious and accurate pleadings, going as far as calling damage allegations mere "boilerplate" and "technicalities." Moreover, case after boilerplate case has demonstrated that each plaintiff has not actually suffered any damage, as is laid out in Experian's motions for summary judgment in the *Pappas* case and *Banno* case, and as will be laid out in this case should the Court not award dismissal. Plaintiff himself is no innocent

bystander. Plaintiff obviously knew that he did not suffer the damage alleged and either willfully allowed a false allegation to be pleaded in a federal Complaint (if he did review the Complaint) or negligently allowed it (if he gave his attorneys permission to file a Complaint in his name without review and consultation). Dismissal is appropriate. *See Kojis v. Equifax Credit Info. Servs.*, No. 02 C 8428, 2004 WL 1005664, at *6 (N.D. Ill. May 6, 2004) (dismissing FCRA case under Rule 11 where Plaintiff fabricated evidence of credit denial); *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 554 (1991) (upholding dismissal as sanction for Rule 11 violation); *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (upholding dismissal as an appropriate Rule 11 sanction where Plaintiff's conduct was willful and flagrant).

Should the Court disagree that dismissal is appropriate, at the very least Experian should be awarded the attorneys' fees and costs it has expended since receipt of the Complaint. Moreover, Experian suggests that an additional appropriate sanction would be requiring Plaintiff and his counsel to pay an amount equal to the amounts received thus-far in settlements and to place those funds into the coffers of a charity. *See Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003) ("In general, the district court enjoys broad discretion in setting a sanction award that it believes will serve the deterrent purpose of Rule 11.")

## **CONCLUSION**

For all of these reasons, Experian respectfully requests that this Court impose Rule 11 sanctions on Plaintiff and his attorneys in the form of dismissing this case, awarding Experian attorneys fees, and all other appropriate sanctions.

Dated: October 14, 2016

Respectfully submitted,

*s/ Jason Z. Zhou*

Adam W. Wiers
Michael A. Zuckerman
Christopher A. Hall
Jason Z. Zhou
JONES DAY
77 West Wacker
Chicago, IL 60601.1692
Telephone: +1.312.782.3939
Facsimile: +1.312.782.8585
Emails: awwiers@jonesday.com
mzuckerman@jonesday.com
chall@jonesday.com
jzhou@jonesday.com

*Counsel for Defendant*
*Experian Information Solutions, Inc.*

- 14 -

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was filed using the CM/ECF system, which will effectuate service on all counsel of record.

                                        */s/ Jason Z. Zhou*