# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
UNITED STATES DISTRICT COURT**

| | |
|---|---|
| PAMELA JUDITH BANNO, | Civil Action No. 15-cv-08291 |
| Plaintiff, | Judge John Z. Lee |
| v. | Magistrate Judge Daniel G. Martin |
| OCWEN LOAN SERVICING, LLC., EXPERIAN INFORMATION SOLUTIONS, INC. and EQUIFAX INFORMATION SERVICES LLC, | |
| Defendants. | |

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Adam W. Wiers
awwiers@jonesday.com
Michael A. Zuckerman
mzuckerman@jonesday.com
Christopher A. Hall
chall@jonesday.com
JONES DAY
77 West Wacker, Suite 3500
Chicago, IL 60601.1692
Telephone: +1.312.782.3939
Facsimile: +1.312.782.8585

*Counsel for Defendant Experian
Information Solutions, Inc.*

# TABLE OF CONTENTS

**Page**

Table of Authorities ....................................................................................................... ii

I.     LEGAL LANDSCAPE ......................................................................................... 2

       A.     The Fair Credit Reporting Act ................................................................... 2

       B.     Chapter 13 of the U.S. Bankruptcy Code ................................................. 3

II.    FACTUAL BACKGROUND ............................................................................... 4

       A.     The Parties ................................................................................................. 4

       B.     Plaintiff's Chapter 13 Bankruptcy ............................................................ 4

       C.     Experian's Bankruptcy Reporting Policies ............................................... 5

       D.     Experian's Bankruptcy-related Reinvestigation Procedures .................... 6

       E.     Experian's Reporting of Plaintiff's Bankruptcy, Plaintiff's Disputes to
              Experian, and Experian's Response ........................................................... 7

       F.     The Account History Block ....................................................................... 8

III.   CLAIMS AGAINST EXPERIAN ....................................................................... 9

## ARGUMENT

I.     PLAINTIFF CANNOT ESTABLISH THE REQUIRED ELEMENT OF
       INACCURACY ................................................................................................... 11

II.    PLAINTIFF CANNOT ESTABLISH NEGLIGENCE ...................................... 13

       A.     Experian Did Not Cause Plaintiff Any Actual Damage .......................... 14

       B.     Experian's General Chapter 13 Bankruptcy Reporting Procedures Are
              Reasonable, and There Can Be No Liability for any Errors Prior to Notice
              of an Inaccuracy ...................................................................................... 16

       C.     Experian Reasonably Reinvestigated Plaintiff's Disputes ...................... 18

III.   EXPERIAN DID NOT WILLFULLY VIOLATE THE FAIR CREDIT
       REPORTING ACT .............................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)......................................................................................................10

*Bagby v. Experian Info. Sols., Inc.,*
162 F. App'x 600 (7th Cir. 2006)...............................................................................14

*Benson v. Trans Union, LLC,*
387 F. Supp. 2d 834 (N.D. Ill. 2005).......................................................................20

*Childress v. Experian Info. Sols., Inc.,*
790 F.3d 745 (7th Cir. 2015)........................................................................16, 17, 21

*Collins v. Am. Red Cross,*
715 F.3d 994 (7th Cir. 2013).....................................................................................10

*Crabill v. Trans Union, L.L.C.,*
259 F.3d 662 (7th Cir. 2001).....................................................................................14

*Crawford v. Countrywide Home Loans, Inc.,*
647 F.3d 642 (7th Cir. 2011).....................................................................................10

*DeAndrade v. Trans Union LLC,*
523 F.3d 61 (1st Cir. 2008)........................................................................................18

*Giacalone v. Experian PLC,*
No. 12 C 1192, 2013 WL 3199982 (N.D. Ill. June 24, 2013) ...............................13

*Gillespie v. Equifax Info. Servs., L.L.C.,*
484 F.3d 938 (7th Cir. 2007) ....................................................................................13

*Henson v. CSC Credit Servs.,*
29 F.3d 280 (7th Cir. 1994) ................................................................................12, 16

*Hupfauer v. Experian Info. Sols. Inc.,*
No. 16-cv-0475, 2016 WL 4506798 (N.D. Ill. Aug. 23, 2016) .......................18, 21

*In re Irby,*
337 B.R. 293 (Bankr. N.D. Ohio 2005) ...................................................................14

*In re Smith*,
    582 F.3d 767 (7th Cir. 2009) .........................................................................................3

*In re Vogt*,
    257 B.R. 65 (Bankr. D. Colo. 2000) ...........................................................................14

*In re Witkowski*,
    16 F.3d 739 (7th Cir. 1994) ...........................................................................................3

*Johnson v. Home State Bank*,
    501 U.S. 78 (1991)........................................................................................................14

*Johnson v. Trans Union*,
    LLC, 524 F. App'x 268 (7th Cir. 2013) .......................................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)......................................................................................................10

*Molina v. Experian Credit Info. Sols.*,
    No. 02 C 5561, 2005 WL 5525336 (N.D. Ill. Jan. 19, 2005) ....................................15

*Morris v. Trans Union LLC*,
    420 F. Supp. 2d 733 (S.D. Tex. 2006), aff'd, 224 F. App'x 415 (5th Cir. 2007) ....................20

*Murray v. New Cingular Wireless Servs., Inc.*,
    523 F.3d 719 (7th Cir. 2008) .......................................................................................21

*Paul v. Experian Info. Sols., Inc.*,
    793 F. Supp. 2d 1098 (D. Minn. 2011).......................................................................20

*Renninger v. ChexSystems*,
    No. 98 C 669, 1998 WL 295497 (N.D. Ill. May 22, 1998) ........................................12

*Ruffin-Thompkins v. Experian Info. Sols., Inc.*,
    422 F.3d 603 (7th Cir. 2005) ...............................................................................14, 19

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007)................................................................................................ passim

*Sarver v. Experian Info. Sols., Inc.*,
    299 F. Supp. 2d 875 (N.D. Ill.), *aff'd sub nom. Sarver v. Experian Info. Sols.*,
    390 F.3d 969 (7th Cir. 2004)
    .............................................................................................................14, 15, 16, 17

*Van Straaten v. Shell Oil Prods. Co.*,
    678 F.3d 486 (7th Cir. 2012) (Cudahy, J., concurring) ........................................................21

*Wantz v. Experian Info. Sols.*,
    386 F.3d 829 (7th Cir. 2004) ........................................................................................12, 13

## STATUTES

11 U.S.C. § 109(e) ........................................................................................................................3

11 U.S.C. § 1301 *et seq* ...............................................................................................................3

11 U.S.C. § 1307(c) ......................................................................................................................4

11 U.S.C. §§ 1322(a)(4), 1328(e) ................................................................................................4

11 U.S.C. § 1325(a)(5) .................................................................................................................4

11 U.S.C. § 1328(a) .....................................................................................................................4

15 U.S.C. 1681g ..........................................................................................................................13

15 U.S.C. 1681g(a) ......................................................................................................................9

15 U.S.C. § 1681c(a)(1) ...............................................................................................................3

15 U.S.C. § 1681e, and .................................................................................................................3

15 U.S.C. § 1681e(b) ........................................................................................................9, 11, 12

15 U.S.C. § 1681e(b), and............................................................................................................14

15 U.S.C. § 1681i ....................................................................................................................9, 18

15 U.S.C. § 1681i(a) ...................................................................................................................18

## OTHER AUTHORITIES

Consumer Financial Protection Bureau, KEY DIMENSIONS AND PROESSES IN THE
    U.S. CREDIT REPORTING SYSTEM, 4 (Dec. 2012) ....................................................................19

Fed. Trade Comm'n, REPORT TO CONGRESS ON THE FAIR CREDIT REPORTING ACT
    DISPUTE PROCESS 34 (Aug. 2006) .........................................................................................21

**NATURE OF THE CASE**

This case involves the intersection of consumer credit reporting and consumer bankruptcy, and presents the unusual case of a plaintiff bringing a federal lawsuit when there is no evidence that Experian Information Solutions, Inc. ("Experian") *ever* reported *any* inaccurate information regarding the plaintiff or her bankruptcy to any third party, and where the plaintiff is unable to point to anything approaching actionable damages in any event. Indeed, the only damages in view here are amorphous claims of emotional distress and exacerbated health issues that were ironically brought on by the plaintiff's own lawyers passing along misinformation regarding the state of her credit file. It is unclear why this litigation exists and persists, but the time has come for it to end.

Plaintiff Pamela Banno ("Plaintiff") filed for Chapter 13 bankruptcy in which she "voluntarily surrendered" a property to Ocwen Loan Servicing ("Ocwen") to satisfy Plaintiff's mortgage debt. Immediately upon filing for bankruptcy, Plaintiff stopped making mortgage payments, but continued living in the home for years, indeed even until months after this lawsuit was filed. Seven months after filing, Plaintiff's bankruptcy was discharged. Almost immediately after obtaining her discharge, Plaintiff sent Experian a dispute letter asking that her accounts be updated to reflect the bankruptcy discharge. She did so without even reviewing a copy of her Experian disclosure to confirm how the discharged accounts were reporting. Experian responded by ensuring and confirming that all identifiable accounts included in Plaintiff's bankruptcy (including the Ocwen account at issue here) were reporting as "Discharged in Bankruptcy" and reflecting a $0 balance. Experian did not hear anything from Plaintiff for a year, then, despite having seen that the Ocwen account was reporting accurately as discharged, Plaintiff sent another dispute letter to Experian asking Experian to ensure that Plaintiff's

1

mortgage account with Ocwen was reporting as discharged.  Experian, which was already reporting the Ocwen account as Plaintiff requested, responded by confirming that Plaintiff's accounts reflected her bankruptcy discharge.

Despite the fact that Plaintiff's Ocwen account has consistently reported accurately as "discharged in bankruptcy," Plaintiff alleges that Experian was inaccurately reporting the Ocwen account and that this reporting was somehow causing her credit denials, mental anguish, and exacerbating her health conditions.  Discovery has revealed that this was apparently based on the peculiar and misinformed advice of her own lawyers.  The indisputable fact is, Experian never provided a credit report containing inaccurate information to any third party, and Plaintiff was never denied credit due to Experian's reporting of the Ocwen account.

The frivolity of Plaintiff's claims regarding the reporting of the Ocwen account laid bare, Plaintiff retreats and now seems focused on a narrow field of additional information associated with the Ocwen account that Experian displayed only to her on her consumer disclosure.  This was information provided to Plaintiff and Plaintiff alone for informational purposes, but never included in a credit report sent to a third party.  Unsurprisingly, this last gasp claim is utterly meritless as well, as the information in this field was factually accurate and was never sent to a third party and, thus, cannot as a matter of law form the basis of any kind of claim against Experian.  Plaintiff's claims are meritless and they should be summarily dismissed.

## **BACKGROUND**

## I.    **LEGAL LANDSCAPE**

This case arises under the FCRA and involves Experian's reporting of Plaintiff's Chapter 13 bankruptcy case.  For background, this brief begins with an overview of the pertinent provisions of the FCRA and the U.S. Bankruptcy Code, both of which are central to this case.

## A.    The Fair Credit Reporting Act.

The FCRA seeks "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).  The Act generally requires a credit reporting agency ("CRA") to use reasonable procedures to ensure maximum possible accuracy of consumer credit information, *see* 15 U.S.C. § 1681e, and to reasonably investigate consumer disputes about the accuracy of credit information, a process called "reinvestigation," *see id.* § 1681i.  Additionally, the Act governs the content of consumer reports and to whom and for what purpose the reports may be furnished. *See, e.g., id.* §§ 1681b, 1681c.

Under the FCRA, a CRA may report information relating to consumer bankruptcies for up to ten years.  *See* 15 U.S.C.  §1681c(a)(1).  Specifically, a CRA "that furnishes a consumer report that contains information regarding any case involving the consumer that arises under Title 11 shall include in the report an identification of the chapter of such Title 11 under which such case arises if provided by the source of the information."  *Id.* at §1681c(d)(1).

## B.    Chapter 13 of the U.S. Bankruptcy Code.

In a Chapter 13 bankruptcy a debtor with regular income may keep her assets and propose a "plan" to pay creditors over time.  *See* 11 U.S.C. § 109(e); 11 U.S.C. §1301 *et seq*; *In re Witkowski*, 16 F.3d 739, 740 (7th Cir. 1994).  Because of their nature, Chapter 13 bankruptcies can be complicated, particularly with the treatment of secured debts.  At the outset, a debtor is required to complete a number of schedules, including Schedule D, which lists all of the debtor's secured creditors, and Schedule F, which lists the debtor's unsecured creditors.  *See* U.S. Bankruptcy Court, Instructions – Bankruptcy Forms for Individuals, 17, 20,  (Apr. 2016).[1]  The

---

[1] The Bankruptcy Court's Instructions are available at http://www.uscourts.gov /file/18169/download.

debtor verifies the accuracy of these Schedules under penalty of perjury. *See id* at 14. Failure to properly list creditors on these Schedules can result in those debts being excluded from the discharge order. *See*, *e.g., In re Smith*, 582 F.3d 767, 770 (7th Cir. 2009).

A Chapter 13 debtor can provide for her secured creditors by paying them through the trustee, paying them outside of the plan via direct payments to the creditor, or by the debtor surrendering the collateral back to the creditor. *See, e.g.,* 11 U.S.C. § 1325(a)(5). If a debtor completes her plan obligations, her debts are discharged and her case is then closed. *See* 11 U.S.C. § 1328(a). Failure to meet the plan's requirements can lead to dismissal of the case. *See* 11 U.S.C. § 1307(c). Chapter 13 plans can take years to complete, and even after a discharge is granted, it can be revoked up to a year later. *See* 11 U.S.C. §§ 1322(a)(4), 1328(e).

## II.     FACTUAL BACKGROUND

### A.     The Parties

Plaintiff Pamela Judith Banno is a "consumer," and Defendant Experian is a "consumer reporting agency" ("CRA") as defined by the FCRA. (SOF ¶¶ 1-2.)[2] As a CRA, Experian collects consumer credit information from various sources, organizes and stores the information, and then makes it available to authorized third parties, like lenders. (*Id.* at ¶ 2.) Experian maintains credit information about Plaintiff. (*Id.*).

### B.     Plaintiff's Chapter 13 Bankruptcy

In 2009, Plaintiff bought a home in Joliet, Illinois, obtaining a mortgage which was eventually transferred to Ocwen Loan Servicing. (*Id.* at ¶ 5.) Like many consumers, Plaintiff saw the value of her home fall during the past decade. (*Id.* at ¶¶ 6-7.) By the time she filed bankruptcy, in October 2013, Plaintiff was underwater on her home, owing more than $25,000

---

[2] References to "SOF" refers to Experian's Rule 56.1 Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment, filed concurrently herewith.

beyond what her home was worth.  (*Id* at ¶ 7.)  Plaintiff's attorneys, who represented her in both the bankruptcy case and this litigation, advised her against other options and informed her that she could surrender the property and walk away from her mortgage obligations.  (*Id.* at ¶¶ 6, 9.) Plaintiff's petition, which was filled out by her attorneys, contained a number of obvious errors. For instance, despite being underwater, Plaintiff's Schedule D listed the unsecured portion of the Ocwen loan as $0.  (*Id.* at ¶ 8.) Strangely, Plaintiff also included Experian among her unsecured creditors on Schedule F, despite knowing that Experian was not, in fact, one of her creditors.  (*Id.* at ¶ 10.)

Plaintiff's bankruptcy plan called for her to surrender the Joliet property to Ocwen.  (*Id.* at ¶ 12.) Plaintiff took this to mean that she would need to move out of the property in order to complete her surrender of the property, something she did not do until December 2015, more than a year after her bankruptcy was filed, and months after this case was filed.  (*Id.*)  Despite the fact that Plaintiff had not yet surrendered the property, the bankruptcy court entered a discharge order on May 15, 2014.  (*Id.* at ¶¶ 12-13.)  The court's discharge order is general in nature, and does not specify which debts are, or are not, subject to the discharge, instructing the reader to consult an attorney to determine the effects of the order.  (*Id.* at ¶ 13.)

Plaintiff entered bankruptcy hoping to get out of her underwater property, which she was able to do.  (*Id.* at ¶¶ 6, 15.)  On the advice of her attorneys, Plaintiff stopped making mortgage payments to Ocwen as soon as she filed her petition, continuing to live in the house for more than two years without paying Ocwen anything.  (*Id.* at ¶ 14.)   Between her years of free lodging and her discharged underwater debt, Plaintiff benefitted to the tune of nearly $50,000 by filing bankruptcy.  (*Id.* at ¶¶ 7, 14-15.)

### C.  Experian's Bankruptcy Reporting Policies

Experian obtains information about consumer bankruptcies in three ways.  First, through its public records vendor LexisNexis Risk & Information Analytics Group, Inc. ("Lexis") (*Id.* ¶ 17.)  Second, not being a proper party to the bankruptcy itself, Experian relies on individual creditors (also called data furnishers) to obtain account-level information.  (*Id.* at ¶ 19.)  Data furnishers can report if a particular account was included in a consumer's bankruptcy, whether that account was discharged in bankruptcy, and in the case of a Chapter 13 bankruptcy, any effects of the bankruptcy plan on the account.  (*Id.* at ¶ 19-20.)  Third, individual consumers are also able to dispute any information they believe is reporting inaccurately in light of their bankruptcy, including whether an account was included in the bankruptcy and the impact of a Chapter 13 plan.  (*Id.* at ¶ 21.)

When Experian is reporting that a particular account was included in a consumer's bankruptcy, and later learns from Lexis that the consumer's bankruptcy was discharged, any specific account reporting as included in the bankruptcy will automatically be updated to report as discharged in the bankruptcy.  (*Id.* at ¶ 22.) Any account reporting as discharged in bankruptcy will also report a $0 balance and no monthly payment obligation.  (*Id.* at ¶ 23.)

### D.  Experian's Bankruptcy-related Reinvestigation Procedures

When a consumer disputes information on their credit file, Experian's response usually involves a reinvestigation of the disputed information.  (*Id.* at ¶ 24.)  For some disputes Experian is able to resolve the issue internally, either based on proof provided by the consumer, or based on Experian's own policies.  (*Id.* at ¶ 24.)  When Experian is able to resolve disputes internally, Experian will automatically send a Dispute Response Notification (DRN) to the data furnisher to notify it of the changes made, as well as provide a summary of why Experian made the change.  (*Id.* at ¶¶ 26-27.)  Where a change is made based on Experian's internal policies, the DRN will

indicate that fact, but it will not include any documents sent by the consumer.  (*Id*. at ¶ 28.)  For example, when a consumer contacts Experian and informs them that particular accounts were included in their Chapter 13 bankruptcy, Experian will internally update those accounts if a) Experian already has record of a bankruptcy on the consumers' file, and b) the account was opened before the bankruptcy was filed.  (*Id*. at ¶¶ 29-30.)  Experian will process this type of dispute the same way, whether the consumer makes if by phone, internet, or mail.  (*Id*. at ¶ 29.)  This type of dispute results in a DRN being automatically sent to the data furnisher explaining that Experian made the changes reflected based on its policies.  (*Id*. at ¶ 30.)

### E. Experian's Reporting of Plaintiff's Bankruptcy, Plaintiff's Disputes to Experian, and Experian's Response.

On May 16, 2014, one day after Plaintiff's bankruptcy was discharged, Lexis reported the discharge to Experian and Experian updated Plaintiff's file.  (*Id*. at ¶ 31.)  By all indications, Ocwen had previously reported the fact that Plaintiff's account was included in her Chapter 13, so Experian's systems automatically updated the Ocwen account such to report as discharged in Chapter 13 two days after learning of the discharge.[3]  (*Id*. at ¶ 32, 40.)

On June 14, 2014, less than a month after her bankruptcy was discharged, Plaintiff sent Experian a generic dispute letter which did not identify any specific accounts, but instead simply informed Experian that Plaintiff's bankruptcy was discharged and asked Experian to "update the credit file(s) to reflect the discharged status of the debts as indicated in the final report of the trustee."  (*Id*. at ¶ 33.) Despite asking Experian to consult the Trustee's report in her letter, Plaintiff did not enclose a copy of the Trustee's report.  (*Id*.)  Regardless, in response to

---

[3] At the time, Experian actually had two tradelines on file from Ocwen, one which began reporting as closed in November 2013 and a second with history beginning in December 2013. Both were reporting as included in Plaintiff's bankruptcy, and were updated to report as discharged on May 16, 2014.  The tradeline which reported as closed was deleted in August 2015.

Case: 1:15-cv-03291 Document #: 66 Filed: 09/26/16 Page 14 of 29 PageID #:743

Plaintiff's June 14, 2014 letter, Experian identified and updated a Macy's store credit card, the only account that was not already reporting as discharged in bankruptcy. (*Id*. at ¶ 34.) Experian then sent Plaintiff a revised consumer disclosure reflecting these changes (*Id*. at ¶ 37), and sent Macy's a DRN notifying them of Plaintiff's dispute and the changes Experian made in response to the dispute. (*Id*. at ¶ 36.) Because Experian's changes were based on its internal bankruptcy policy, Experian did not include any documents with the DRN. (*Id*.) After Experian processed Plaintiff's June 2014 dispute, all of Plaintiff's accounts that were included in her bankruptcy were properly reporting a discharged status and $0 balance. (*Id*. at ¶¶ 35, 40.)

In July 2015, more than a year later, Plaintiff pulled her annual credit report, which showed that the Ocwen account was accurately reporting a $0 balance, a status of "Discharged through Bankruptcy Chapter 13." (*Id*. at ¶ 39.) Strangely, in spite of this reporting Plaintiff sent another dispute letter to Experian, asking Experian to update the Ocwen account to reflect as discharged and report a $0 balance. (*Id*. at ¶ 41.) Experian received this letter on August 11, 2015 and responded by updating a number of accounts, including the Ocwen accounts, re-confirming that the discharged status of the loans was on file. (*Id*. at ¶¶ 41, 43-44.) On August 17, 2015 Experian again sent Plaintiff a new copy of her updated consumer disclosure and sent all affected creditors DRNs. (*Id*. at ¶ 45.) Although she now bases her case on the "Account history" field in her disclosure, Plaintiff's July 2015 dispute did not mention it, or as discussed below, otherwise dispute it. (*Id*. at ¶ 53) Similarly, though she claims now that she was distressed by what she says she perceived as lingering errors on her Experian report, Plaintiff deferred to her attorneys' judgment to delay a year in sending this second dispute. (*Id*. at ¶ 42.)

## F. The Account History Block.

Certain subscribers report to Experian their internal records regarding the balance history associated with particular tradelines even when those accounts may not be collectible by the

creditor. (*Id.* at ¶ 46-47.) When a subscriber provides this information to Experian, Experian will include the information in consumer disclosures provided to individual consumers in a block of the disclosure entitled "Account history." (the "Account History Block") (*Id.* at ¶ 46.) It does so for two reasons. One, consumers may find it interesting to know certain additional information regarding the balance history. (*Id.* at ¶ 49.) And two, because the FCRA requires Experian to provide consumers "all information in the consumers file . . . ." (*Id.* at ¶ 49; *see also* 15 U.S.C. 1681g(a).) The Account History Block is essentially informative for the consumer, giving them a glimpse into their creditor's internal records. Experian *does not include* this information on credit reports it provides to creditors when a consumer applies for new credit. (*Id.* at ¶ 50.) Experian does rely on some of this information to derive one ancillary product purchased by a small number of Experian clients, (*Id.* at ¶¶ 48, 51) but Experian's records for the time period following Plaintiff's bankruptcy do not show any inquiries on Plaintiff's file from the few clients who occasionally purchase the product derived from a portion of the Account History Block. (*Id.* at ¶¶ 48-52.) Thus, no third party *ever* viewed the information in Plaintiff's Account History Block when reviewing an Experian credit report.

After Plaintiff's July 2015 dispute, the Account History Block of Plaintiff's August 2015 disclosure continued to show a balance of $173,170 with a scheduled payment of $1,560 from December 2013 to May 2015, the period of time Plaintiff was indisputably still living in the Joliet property and still contractually obligated to Ocwen, even if Ocwen's remedies were limited by the bankruptcy discharge. (*Id.* at ¶¶ 12, 46.) At no point in time did Plaintiff ever dispute the information Experian relayed to her in the Account History Block. (*Id.* at ¶ 53.)

## III. CLAIMS AGAINST EXPERIAN

Plaintiff's Complaint, filed on September 21, 2015, alleges that Experian violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible

accuracy when Experian prepared credit reports about Plaintiff. (Compl. ¶ 120.) Plaintiff also alleges that Experian violated 15 U.S.C. §1681i by failing to reasonably reinvestigate Plaintiff's dispute. (*See* id. ¶¶ 121-124.) Plaintiff claims that Experian's violations were both negligent and willful. (*See id.* at ¶ 134; 15 U.SC. §§ 1681n-o.) Plaintiff alleges that she was damaged by Experian because, among other things, Plaintiff suffered "physical illness and injury, medical bills, the loss of credit, the loss of ability to purchase and benefit from a credit lines . . . ." (*Id* at ¶ 74.) Plaintiff's claims are based entirely on the information contained in the Account History Block of Plaintiff's consumer disclosure. (*See id*. at ¶¶ 46-47, 53-54.)

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Crawford v. Countrywide Home Loans, Inc*., 647 F.3d 642, 647 (7th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). Viewing "the evidence in the light most favorable to the nonmoving party, . . . [a] genuine issue of material fact exists only where there is enough evidence that a reasonable jury could return a verdict in favor of the non-moving party." *Collins v. Am. Red Cross*, 715 F.3d 994, 997 (7th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986) (internal citations omitted).

## ARGUMENT

While Plaintiff's case is replete with flaws, two key problems doom it from the start. *First*, Plaintiff cannot clear the initial hurdle of making a *prima facie* showing of an inaccuracy needed for each of Plaintiff's claims. Simply put, the undisputed facts show that Experian never provided any third party a credit report containing inaccurate information regarding Plaintiff. This is a fatal deficiency. *Second*, Plaintiff cannot show any damages attributable to Experian. This lack of damages leaves Plaintiff with only statutory damages, which are available for only willful violations of the FCRA, but she comes nowhere near meeting the Seventh Circuit's exacting standard required to sustain a claim for a willful violation of the FCRA.

Even ignoring these dispositive issues, Plaintiff's § 1681e(b) claim that Experian failed to maintain reasonable procedures independently fails for additional reasons. Experian's reporting to third parties of the Ocwen account was at all times precisely accurate.[4] These facts cannot sustain a claim under 1681e(b), especially where Experian's general bankruptcy reporting procedures were upheld as reasonable as a matter of law by the Seventh Circuit in a case with significant conceptual overlap to the theory Plaintiff alleges. Likewise, Plaintiff's remaining § 1681e(b) and § 1681i claims are doomed by the fact that, after receiving Plaintiff's disputes, Experian reasonably reinvestigated Plaintiff's accounts, making the exact changes Plaintiff asked for, as well as notifying the impacted furnishers, and sending Plaintiff updated disclosures reflecting those changes.

There are no disputed issues of material fact in this case. Instead, Experian's liability, or lack thereof, turns entirely on questions of law about Experian's procedures and reinvestigation

---

[4] By all indications, it took Experian just one day after the bankruptcy discharge to update the reporting of the Ocwen account.

of Plaintiff's disputes. This case is ripe for summary judgment, and as explained below, Experian is entitled to judgment as a matter of law on all of Plaintiff's claims.

## I.    PLAINTIFF CANNOT ESTABLISH THE REQUIRED ELEMENT OF INACCURACY.

The FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Liability under §§ 1681e(b) and 1681i require a showing that Experian "prepared a report containing 'inaccurate' information." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (citation omitted); *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 833–34 (7th Cir. 2004), as amended (Nov. 16, 2004) abrogated on other grounds by *Safeco*, 551 U.S. at 47). The FCRA distinguishes between consumer disclosures, which are sent only to the consumer, and consumer credit reports: "[t]here is no consumer report unless there is a 'communication . . . for the purpose of serving as a factor in establishing the consumer's eligibility for' credit or other statutorily enumerated purposes . . . *i.e.*, there cannot be a consumer report without disclosure to a third party." *Wantz.*, 386 F.3d at 833–34; *see also Renninger v. ChexSystems*, No. 98 C 669, 1998 WL 295497, at *6 (N.D. Ill. May 22, 1998) ("Underpinning this conclusion is the fact a consumer is not injured by an inaccurate credit report unless that false information is communicated to and acted upon by a third-party user.")

Plaintiff's claims fail at the outset because she cannot show that Experian *ever* provided an inaccurate credit report to a third party. Just days after Plaintiff's bankruptcy was discharged, the Ocwen account was reporting as discharged in bankruptcy, with a $0 balance. *See supra* at 7. Plaintiff thus rests her claims on the continued appearance of the Account History Block that remained on Plaintiff's consumer disclosure after her disputes while her foreclosure was

ongoing. But, critically and fatally, even if this information Experian provides to consumers was inaccurate (which is was not),[5] this information cannot serve as the foundation for Plaintiff's claims because Experian indisputably never included it in a credit report issued to a third party. *See supra* at 8-9.[6]

Without this threshold showing of an inaccurate credit report issued to a third party, Plaintiff's claims under both 1681e(b) and 1681i fail entirely and Experian is entitled to summary judgment. *See, e.g., Wantz* 386 F. 3d at 833-34; *Johnson v. Trans Union*, LLC, 524 F.

---

[5] While the Court need not consider it since the Account History Block indisputably was never sent to a third party, it was accurate in any event. Ocwen continued to report information to Experian showing a balance on a property while foreclosure proceedings were pending. (SOF ¶ 12) There is nothing inaccurate about this reporting because Plaintiff's discharge did not extinguish the debt, rather "a bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor in personam-while leaving intact another –namely, an action against the debtor in rem." *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); *see also In re Irby*, 337 B.R. 293, 295 (Bankr. N.D. Ohio 2005) (explaining that reporting a discharged debt is not inaccurate because "[a]ll that is being reported is the truth"). Until Ocwen had completed the foreclosure process in December 2015, it was not inaccurate for Ocwen to maintain that balance information, because that still exists, even if Ocwen's legal options to enforce Plaintiff's obligations were limited. *See In re Vogt*, 257 B.R. 65, 70 (Bankr. D. Colo. 2000) (explaining that a creditor was not in error to report a discharged debt as due and owing because the discharge does not "wipe away the debt").

[6] Plaintiff sues under sections 1681e(b) and 1681i of the FCRA. As described, these provisions govern Experian's responsibilities with regard to the creation of consumer reports provided to third parties and, thus, if no inaccurate consumer report is provided to a third party, those provisions cannot have been violated as a matter of law. Plaintiff's Account History Block allegations relate exclusively to her consumer *disclosures* provided directly to her (not reports provided to third parties), but there is a *different* provision of the FCRA that governs consumer disclosures, 15 U.S.C. 1681g. Notably, Plaintiff does not allege that Experian violated 1681g, nor could she base any such claim on the Account history information, as 1681g requires only that Experian accurately disclose the contents of a consumer's file, not that the contents themselves be accurate. *See, e.g., Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007)(explaining that § 1681g requires that a CRA clearly and accurately disclose the contents of its files to the consumer, so that the consumer can assess the file for inaccuracies); *Giacalone v. Experian PLC*, No. 12 C 1192, 2013 WL 3199982, at *2 (N.D. Ill. June 24, 2013) ("A CRA in possession of erroneous credit information about a consumer, that it sends to that consumer, does not constitute a consumer credit report and hence does not trigger the FCRA.").

App'x 268, 270 (7th Cir. 2013) (Plaintiff "must prove that something in his credit report was inaccurate").

## II.     PLAINTIFF CANNOT ESTABLISH NEGLIGENCE.

Because the FCRA is not a strict liability statute, even if Plaintiff could show the existence of an inaccurate credit report, Experian is still entitled to summary judgment on Plaintiff's negligence claims. *See, e.g., Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 608 (7th Cir. 2005). Rather than requiring perfection from a credit reporting agency, the FCRA requires only that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates," 15 U.S.C. § 1681e(b), and to "conduct a reasonable reinvestigation" when a CRA is notified of a dispute. *See id.* § 1681i(a).

To prevail on her negligence claims, Plaintiff "must raise a question of material fact on each of four elements: (1) that there was inaccurate information in her consumer credit report, (2) that the inaccuracy was due to Experian's failure to follow reasonable procedures to assure accuracy, (3) that [s]he suffered actual damages, and (4) that those damages were caused by the inaccuracy." *Sarver v. Experian Info. Sols., Inc.*, 299 F. Supp. 2d 875, 876 (N.D. Ill.), *aff'd sub nom. Sarver v. Experian Info. Sols.*, 390 F.3d 969 (7th Cir. 2004). Because Plaintiff cannot show any of these elements, she cannot prove her case, and Experian is thus entitled to summary judgment as to Plaintiff's allegations of negligence.

### A.     Experian Did Not Cause Plaintiff Any Actual Damage.

Like inaccuracy, damage causation is a threshold requirement for any claim of negligence under the FCRA: "the reasonableness inquiry is unnecessary until the plaintiff has 'show[n] that she suffered damages as a result of the inaccurate information.'" *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 603–04 (7th Cir. 2006) (quoting *Ruffin-Thompkins*, 422 F.3d at 608).

"Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'" *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001). Here, there is no causal relation between Experian's reporting and Plaintiff's alleged damages because the undisputed facts show that the Plaintiff has not (and could not have) suffered any damages related to Experian's reporting of the Ocwen account.

*First*, Plaintiff has not been denied credit based on inaccurate information provided by Experian. Despite filing a federal complaint claiming "the loss of credit, the loss of ability to purchase and benefit from a credit line" (Compl. at ¶ 74), discovery has not provided any instance of Plaintiff being denied credit due to Experian's reporting. (*See* SOF ¶¶ 54-55.) During deposition, Plaintiff bemoaned a supposed difficulty in obtaining credit (unsupported with any evidence), but this should not have been surprising to Plaintiff. As Plaintiff knew, one of the primary downsides of filing bankruptcy is that it will be more difficult to obtain credit. (*See* SOF ¶ 16; *see also Molina v. Experian Credit Info. Sols.*, No. 02 C 5561, 2005 WL 5525336, at *5 (N.D. Ill. Jan. 19, 2005) (noting that Plaintiff "wisely abandons" a claim for actual damages where "he had several other blemishes on his credit record").) Of course, because Experian's reporting was always accurate, even if Plaintiff had been denied credit based on an Experian credit report, any such denial would be on the merits of Plaintiff's accurate file, untethered to an inaccuracy, and would thus fail the requirement of causation in any event. *See supra* at 11-13.

*Second*, Plaintiff's self-serving claims of emotional distress are not sufficient to avoid summary judgment. While Plaintiff alleged that she suffered a variety of emotional damages and exacerbated health issues (*See* Compl. ¶ 74), discovery failed to substantiate these beyond

Plaintiff's own self-serving statements, which are insufficient to avoid summary judgment. *See Sarver*, 390 F.3d at 971 (explaining that the Seventh Circuit maintains "a strict standard for a finding of emotional damage" and such claims must be supported by more than Plaintiff's own statements); (SOF ¶ 56).

Perhaps more concerning, the record indicates that Plaintiff's own lawyers are the real root of her frustrations. Without any evidence whatsoever, Plaintiff's attorneys told her that Experian was causing her to be denied credit. (*See* SOF ¶ 57.) Despite now claiming that her credit disputes with Experian were causing her significant mental anguish and health problems, Plaintiff's lawyers allowed more than a year to go by between her disputes. (*See id*.) Plaintiff never understood what, if anything, was inaccurate about Experian's reporting, trusting her attorneys advice that she should sue Experian. (*See id*.)

In the end, Plaintiff has no one to blame but herself for employing attorneys who were unable to read a credit report, or were willing to mislead Plaintiff about its contents, so as to prop up an otherwise frivolous FCRA claim, hoping to extract a settlement. Without a showing that Experian's alleged violations caused her any actual damage, the Court's analysis of Plaintiff's negligence claims can end here as Experian is entitled to summary judgment on these claims.

**B.     Experian's General Chapter 13 Bankruptcy Reporting Procedures Are Reasonable, and There Can be no Liability for any Errors Prior to Notice of an Inaccuracy.**

Even assuming, *arguendo*, that Experian had provided an inaccurate credit report which caused damage to Plaintiff, Experian remains entitled to summary judgment because Experian "is not liable under the FCRA if it followed 'reasonable procedures to assure maximum possible accuracy . . . .'" *Henson,* 29 F.3d at 284 (quoting 15 U.S.C. 1681e(b)). As a matter of law, a credit reporting agency like Experian follows reasonable procedures when it relies on information obtained from a presumptively reasonable source. *See id* at 285 (reporting

information obtained from a court's docket is reasonable as a matter of law); *Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015) (reliance on LexisNexis for bankruptcy reporting is reasonable as a matter of law).  Moreover, the FCRA "does not hold a reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures."  *Sarver*, 390 F.3d at  972 (citation omitted).  There is no genuine dispute here that Experian relied on presumptively reliable sources of information to report Plaintiff's bankruptcy, nor is there even an allegation that Experian had any notice of systematic problems with its procedures.

Prior to Plaintiff's dispute, Experian had obtained the general public record information about her bankruptcy from Lexis, and the account-level specific information from Ocwen.  (*See* SOF ¶¶ 31-32.)  Neither source is alleged to be systematically unreliable and, in fact, Experian's reliance on Lexis and data furnishers is unquestionably reasonable.  Just last year, the Seventh Circuit upheld Experian's reliance on Lexis in a case very similar to this one.  *See Childress,* 790 F.3d at 746.  In *Childress*, the Seventh Circuit rejected an argument that would require Experian to have someone with some bankruptcy training, monitor court dockets and classify bankruptcy dismissals as voluntary or involuntary.  *See id* at 746-47.  Plaintiff implicitly asks for this Court to require Experian to employ a similar procedure here, suggesting that, by listing Experian on her bankruptcy schedules, the Bankruptcy Noticing Center effectively served Experian with all significant filings in Plaintiff's bankruptcy case and Experian should have updated Plaintiff's file accordingly.  (*See* Compl. at ¶¶ 17, 22, 26.)[7]  Plaintiff's suggested procedure is unquestionably

---

[7] Among other problems with this theory, the Bankruptcy Court for the Northern District of Illinois expressly informs debtors that "The bankruptcy court does NOT perform any activities with the credit bureaus."  *See*  Bankr. N.D. Ill., How do I get my bankruptcy removed from the

unreasonable as Chapter 13 bankruptcies are complex, often years long, proceedings that can take a variety of turns and an individual debtor can muddy the waters by "surrendering" property, but continuing to live in it for years after the discharge. *See supra* at 3-4.

In Plaintiff's view, Experian should sort this all out by tracking notices from the BNC, matching them to a consumer's file, and interpreting their significance. Not only would such a procedure be incredibly costly, it would require Experian to make numerous legal calls about the effects of a Chapter 13 plan and general discharge order that are not appropriate under the FCRA. *See, e.g., Hupfauer v. Experian Info. Sols. Inc.*, No. 16-cv-0475, 2016 WL 4506798, *7 (N.D. Ill. Aug. 23, 2016) (stating that determining whether a particular account was included in a discharge "is precisely the kind of legal question that credit reporting agencies are neither qualified nor obligated to answer"); *see also DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (holding that an alleged inaccuracy arising from the legal validity of a mortgage loan "is not a factual inaccuracy . . . but rather a legal issue that a credit agency . . . is neither qualified nor obligated to resolve under the FCRA").

## C. Experian Reasonably Reinvestigated Plaintiff's Disputes

After receiving a consumer dispute, the FCRA requires Experian to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a). Liability under § 1681i does not begin until the consumer has notified the CRA of a potential error in her credit report because "[t]he consumer is in a better position than

---

(continued…)

Credit Bureau's record?, *available at* http://www.ilnb.uscourts.gov/faqs/answer?fid=149&cid=5&pid=136&guid=FAQ_57bdfdbb728f 5 (last visited Aug. 24, 2016 at 3:07 p.m.).

the credit reporting agency to detect errors." *Ruffin-Thompkins*, 422 F.3d at 608 (internal quotation omitted).

Here, Experian discharged its reinvestigation duties in response to both disputes Plaintiff made.  In Plaintiff's first dispute, she sent Experian a dispute letter that did not identify any particular account, merely asking that Experian "update the subject credit file(s) to reflect the discharged status of the debts as indicated on the Final Report from the Trustee." *See supra* at 7-8.  Experian reviewed the documents Plaintiff submitted, and, based upon its internal policies, updated Plaintiff's Macy's account, the only account Experian identified that was not already reporting a discharged status. *See supra* at 7.  Experian then sent Macy's a DRN informing it of the changes made and sent Plaintiff a revised consumer disclosure. *See id.*  When, more than a year later, Plaintiff specifically disputed the Ocwen account, Experian repeated this process, ensuring that the Ocwen account was reflecting a $0 balance and a discharged status that plainly indicated that Plaintiff's personal liability had been discharged. *See supra* at 8.

Plaintiff seemingly takes issue with the fact that Experian resolved her dispute internally and did not forward on her dispute letter to Ocwen (*See* Pl.'s Mot. to Amend Complaint, ECF No. 84 at ¶ 9), but neither of these facts renders Experian's reinvestigation unreasonable.  It is well-known in the credit reporting industry that the CRAs resolve many of the disputes they receive internally. *See, e.g.,* CONSUMER FINANCIAL PROTECTION BUREAU, KEY DIMENSIONS AND PROESSES IN THE U.S. CREDIT REPORTING SYSTEM, 4 (Dec. 2012) (noting that "The NCRAs resolve an average of 15% of trade line disputes internally (without furnisher involvement)").[8] Nothing in the FCRA suggests that this is improper.  Similarly, there is no provision in the FCRA that requires a CRA to forward all documents it receives from a consumer related to a

---

[8] The CFPB's report is available at http://files.consumerfinance.gov/f/201212_cfpb_ credit-reporting-white-paper.pdf.

dispute to the data furnisher and courts have declined to read such a requirement into the statute. *See Benson v. Trans Union, LLC*, 387 F. Supp. 2d 834, 843 (N.D. Ill. 2005) ("the statute does not require a credit reporting agency to pass along all information received from a consumer"); *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1103 (D. Minn. 2011) ("No language in the statute requires a CRA to forward documents to data furnishers to satisfy its obligation."); *Morris v. Trans Union LLC*, 420 F. Supp. 2d 733, 754 (S.D. Tex. 2006), aff'd, 224 F. App'x 415 (5th Cir. 2007) ("Nothing in the FCRA requires Defendant to append a copy of the consumer's dispute letter.")  In fact, Experian's practice of internally resolving some bankruptcy disputes in favor of the consumer and then notifying the data furnisher that Experian has relied on its policies to make changes to the consumers account serves the FCRA's dual goal of accuracy and efficiency.

The undisputed facts show that Experian employs reasonable procedures to ensure maximum accuracy of consumer reports as affected by Chapter 13 bankruptcies and that Experian discharged its reinvestigation duties in response to Plaintiff's disputes.  As such, even ignoring the other fatal flaws in Plaintiff's case, Experian is entitled to summary judgment.

## III. EXPERIAN DID NOT WILLFULLY VIOLATE THE FAIR CREDIT REPORTING ACT

Again, assuming for the sake of argument that Experian ever published an inaccurate credit report about Plaintiff, because she cannot establish any damages her only hope of recovery rests on proving that Experian willfully violated the FCRA under § 1681n, but to do so, she must establish the element of willfulness.  A defendant acts in willful violation of the FCRA where it acts in "reckless disregard of [its] statutory duty." *Safeco*, 551 U.S. at 57.  A CRA does not act in reckless disregard of the FCRA unless its action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law

20

substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. This is an entirely objective inquiry. *See Van Straaten v. Shell Oil Prods. Co.*, 678 F.3d 486, 492 (7th Cir. 2012) (Cudahy, J., concurring). Objective reasonableness is judged against the statutory text and any judicial or administrative guidance that existed at the time of the alleged violation. *See id.* at 69-70; *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726-27 (7th Cir. 2008).

Plaintiff cannot show that Experian's bankruptcy reporting procedures are unreasonable, let alone objectively unreasonable to sustain her willfulness claims. The complicated nature of Chapter 13 bankruptcies explains why Experian's bankruptcy reporting procedures at issue in this case have been upheld by the Seventh Circuit. *See Childress*, 790 F.3d at 745; *see also Hupfauer*, 2016 WL 4506798, at *7 ("requiring a third party such as a credit bureau to determine whether a specific account was discharged in a particular consumer's Chapter 13 bankruptcy would impose an unfairly heavy burden on that party"). Likewise, the theory advanced when Plaintiff moved to amend her Complaint is an attempt to extend Experian's reinvestigation duties under § 1681i(a)(2) where regulatory agencies and courts have repeatedly declined to do so. *See supra* at 20; Fed. Trade Comm'n, REPORT TO CONGRESS ON THE FAIR CREDIT REPORTING ACT DISPUTE PROCESS 34 (Aug. 2006) (noting that the CRAs do not always send documents to data furnishers and stating "By itself, however, this does not mean that CRAs fail to convey "all relevant information" to furnishers . . .this process may be sufficient in most cases to resolve the dispute properly . . . ").[9] Even on the remote possibility that this Court agrees with Plaintiff that "all relevant information" in § 1681i(a)(2) is synonymous with "all documents," Experian cannot have willfully violated the FCRA by employing procedures that have been upheld by courts and

---

[9] The FTC Report is available at https://www.federalreserve.gov/boarddocs/rptcongress/fcradispute/fcradispute200608.pdf.

regulatory authorities.  *See Safeco*, 551 U.S. at 70, n.20 ("Congress could not have intended such a result for those who followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been.").

At bottom, this is not a case of Experian relying on a good-faith, but possibly mistaken interpretation of the FCRA.  Experian's procedures in this case fall squarely within the guidance of case law.  Instead, this is a case of a Plaintiff and her attorneys who, after already leveraging the bankruptcy court to her own benefit, decided to double-down with litigation based on illusory damages and unsupported legal theories.  There was no basis for Plaintiff's allegations at the outset of this case, and there is no support for them now.  Experian did not violate the FCRA at all, let alone willfully, and is entitled to summary judgment on Plaintiff's claims.

## **CONCLUSION**

In consideration of the foregoing, Experian respectfully requests that this Court grant Experian's Motion for Summary Judgment and dismiss all of Plaintiff's claims against it with prejudice.

Dated this 26th day of September, 2016.　　　　By:　/s/ *Adam W. Wiers*

　　　　　　　　　　　　　　　　　　　　　　JONES DAY

　　　　　　　　　　　　　　　　　　　　　　Adam W. Wiers
　　　　　　　　　　　　　　　　　　　　　　awiers@jonesday.com
　　　　　　　　　　　　　　　　　　　　　　Michael A. Zuckerman
　　　　　　　　　　　　　　　　　　　　　　mzuckerman@jonesday.com
　　　　　　　　　　　　　　　　　　　　　　Christopher A. Hall
　　　　　　　　　　　　　　　　　　　　　　chall@jonesday.com
　　　　　　　　　　　　　　　　　　　　　　77 West Wacker, Suite 3500
　　　　　　　　　　　　　　　　　　　　　　Chicago, IL  60601.1692

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Defendant Experian*
　　　　　　　　　　　　　　　　　　　　　　*Information Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed using the CM/ECF system, which will effectuate service on all counsel of record.


/s/ Christopher A. Hall