IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15 C 11140 |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Kenneth Jackson brought suit against Experian Information Solutions, Inc., Ocwen Loan Servicing, LLC, and Residential Credit Solutions, Inc. (RCS), alleging violations of the Fair Credit Reporting Act (FCRA). After the Court denied RCS's motion to dismiss, *Jackson v. Experian Information Solutions, Inc.*, No. 15 C 11140, 2016 WL 2910027 (N.D. Ill. May 19, 2016), Jackson settled his claims against Ocwen and RCS. His sole remaining claim is against Experian for its alleged violation of the FCRA provision that requires credit reporting agencies to reinvestigate the accuracy of information in a consumer's credit file upon receiving a consumer's dispute notice, 15 U.S.C. § 1681i(a).[1]

The parties have filed cross-motions for summary judgment. Experian argues that it did not violate section 1681i(a) and that even if it did, no reasonable jury could find that it caused Jackson to suffer any actual damages. Jackson argues that

---

[1] In his complaint, Jackson also alleged that Experian violated 15 U.S.C. § 1681e(b), but he states in his brief that he is no longer pursuing that claim.

1

Experian's continued inaccurate reporting of an account balance following his bankruptcy caused him actual emotional distress and that even if he did not suffer actual damages, he is entitled to statutory damages based on Experian's willful violation of the FCRA. For the reasons stated below, the Court grants Experian's motion and denies Jackson's motion.

**Background**

The Court provided factual background in its ruling on the motion to dismiss, with which the Court assumes familiarity. See *Jackson*, 2016 WL 2910027, at *1–*2. Thus the Court need only summarize the essential background facts here. In March 2013, Jackson filed for Chapter 13 bankruptcy because he could no longer afford the mortgage payments on the residential property he co-owned (the Greenview property) and had difficulty selling the property on the open market following the housing market crash. Though IndyMac Bank Home Loan Servicing and CitiMortgage were the original servicers of Jackson's mortgage loan, the servicing rights changed hands over time— OneWest Bank, FSB and Citibank became the servicers of the loan with IndyMac sometime prior to Jackson's bankruptcy, Ocwen Loan Servicing became the servicer of that loan in November 2013, and RCS became the servicer of the loan sometime around June 2015. Jackson filed his modified Chapter 13 plan in June 2013. The plan provided that Jackson would surrender the Greenview property to IndyMac and Citimortgage, the loan's servicers at the time, in full satisfaction of their claims. The bankruptcy court confirmed Jackson's modified Chapter 13 plan in June 2013, and the court discharged most of Jackson's debts when it entered a discharge order in December of that year. Jackson admits he knew at the time he filed for bankruptcy that

2

doing so would adversely affect his credit score.

Experian is a credit reporting agency whose business consists of compiling consumer credit information and providing that information to others. Experian communicates with creditors (also known as "data furnishers") through an industry-wide automated online system called "e-Oscar." The FCRA provides that if a consumer disputes the accuracy of information that a consumer reporting agency maintains in the consumer's credit file, the consumer may notify the agency of the dispute, and the agency must conduct a reasonable reinvestigation of the file. 15 U.S.C. § 1681i(a)(1)(A). Experian processes consumer disputes and updates inaccurate information using either an "internal" investigation and update process or an "external" investigation and update process. If Experian can resolve the dispute using the information produced by the consumer in its dispute letter or the information currently in the consumer's credit file, it will resolve the dispute "internally" and then send a Dispute Response Notification (DRN) to the data furnisher through e-Oscar to notify the furnisher of the changes Experian made. If Experian cannot resolve the dispute internally, it will send the data furnisher an Automated Consumer Dispute Verification (ACDV) form through e-Oscar. An ACDV form is designed to elicit a response from the data furnisher to verify whether the information the furnisher is reporting to Experian is accurate.

Experian received a dispute letter from Jackson in early November 2015.[2] Along with his letter, Jackson submitted his bankruptcy discharge order, his confirmed bankruptcy plan, and schedules D, E, and F from his bankruptcy petition. In the letter,

---

[2] Jackson also sent Experian a dispute letter in January 2014, but he bases his claim solely on Experian's response to the November 2015 letter.

Jackson asked Experian to update the Ocwen, RCS, and OneWest accounts in his consumer file to "report a current balance and a monthly payment of '0'" and to reflect "an accurate payment history on the accounts that ha[d] been discharged in [his] bankruptcy case." Def.'s Ex. F, dkt. no. 89-6, at 2. At the time Experian received Jackson's dispute letter, Jackson's RCS account was already reporting as discharged in Chapter 13 bankruptcy, his Ocwen account was reporting as discharged in Chapter 7 bankruptcy, and his OneWest account was no longer reporting. Both the RCS and Ocwen accounts were already reporting a $0 balance and no monthly payment obligation. Experian processed Jackson's dispute internally, updating the date of discharge for his RCS account and confirming that it was properly reporting as discharged in Chapter 13 bankruptcy, and updating the Ocwen account to reflect that the account was discharged in Chapter 13 bankruptcy rather than in Chapter 7. After making the updates, Experian sent DRNs to Ocwen and RCS notifying them that it had updated the information it maintains for those accounts.

On November 11, 2015, Experian formally responded to Jackson's dispute letter with an updated disclosure form displaying the information in his credit file. The form reflected that Jackson's Ocwen and RCS accounts had been discharged through Chapter 13 bankruptcy on December 26, 2013 and that both accounts were reporting a $0 balance with no monthly payment obligation.

The form that Experian sent to Jackson also included a field labeled "Account History" for each account. The Account History field for Jackson's Ocwen accounts showed an account balance of $503,474 and a scheduled monthly payment of from November 2013 through December 2014. The Account History field for the RCS

4

account showed a variable account balance and a scheduled monthly payment of $3,639 from June 2015 through August 2015. Experian created the Account History fields in Jackson's file by saving the balance and scheduled payments that Ocwen and RCS had reported in a given month. Experian includes that information in its consumer disclosures to inform consumers what information their creditors are reporting and because 15 U.S.C. § 1681g requires consumer reporting agencies to disclose to consumers all information it has in their files. Though Experian maintains the Account History information in a consumer's file, it does not include that information in credit reports it provides to creditors in connection with applications for new credit. And although Experian does use some of the Account History information to describe a consumer's balance trends in a product called "TrendView," Experian maintains that nothing in Jackson's file indicates that any creditor made an inquiry associated with TrendView.

Jackson has been denied credit twice since his December 2013 bankruptcy discharge. On December 11, 2015, he applied online for a Discovery Financial Services card and was denied immediately. Three days later, Bank of America denied Jackson's Visa credit card application because of his "current or past delinquency with one or more of [his] creditors" and because he had "delinquency and a public record or collection account(s) appearing on [his] credit file." Def.'s Ex. K, dkt. no. 89-11, at 2.

In his complaint, Jackson alleges that Experian's actions caused him emotional distress. When asked how that distress has manifested itself, Jackson responded: "Well, I mean, sleeping being an issue, worry about finances, you know. I would say also—although I hate to admit this—irritability and agitation, short temper." Def.'s Ex. A,

5

dkt. no. 89-1, at 128:12–17.  Jackson also testified during his deposition that he has not suffered emotional distress related to Experian's reporting since the date that Experian responded to his dispute letter in November 2015.  *Id.* at 130:14–20.

Jackson contends that Experian violated the FCRA by continuing to report positive account balances and scheduled payments past the date of his bankruptcy discharge in the Account History sections of his file.  Experian denies that its response to Jackson's consumer dispute violated the FCRA.  And even if that response was inadequate, Experian argues, Jackson's claim fails because he has not produced evidence that it caused him to suffer any actual damages.  The Court addresses the parties' arguments below.

## Discussion

Summary judgment is appropriate where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A dispute about a material fact is "genuine" only if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial."  *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016).  In determining whether the non-moving party has put forth sufficient evidence, courts view the record in the light most favorable to the non-moving party.  *Id.*

Under the FCRA, if a consumer reporting agency receives notification that a consumer disputes the completeness or accuracy of information contained in the

6

consumer's file, the agency must "conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item [of information] from the file" within a specified time frame. 15 U.S.C. § 1681i(a)(1)(A). Jackson contends that Experian failed to conduct a reasonable reinvestigation of his file, which led to the continued reporting of outstanding account balances in the Account History portions of the Ocwen and RCS accounts in his file. Experian responds that its reporting of his Account History was not an inaccurate representation of the information Ocwen and RCS were reporting and that its investigation was an otherwise reasonable response to the dispute letter Jackson sent.

Under section 1681i, "[b]efore any discussion of the reasonableness of the reinvestigation is necessary, . . . [the consumer] must show that [he] suffered damages as a result of the inaccurate information." *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) (internal quotation marks omitted). In this case, Jackson has failed to produce evidence from which a reasonable jury could find "a causal relation between the violation of the statute and the loss of credit, or some other harm." *Id.* Jackson asserts that the two December 2015 denials of his credit card applications were "based in whole or in part on information in [his] Experian credit file." Pl.'s Mem. in Supp. of Mot. for Summ. J. and Resp. to Def.'s Mot. at 9. But Jackson offers no evidence to support this assertion. On the contrary, it is undisputed that when Experian produces credit reports for creditors making inquiries related to new credit applications, Experian does not include Account History field information—the allegedly inaccurate portion of Jackson's credit file—in those reports. Experian does use

7

information from the Account History field to create a product called TrendView, and third parties who use this product may be able to view the Account History information. But Experian asserts that there is no indication on Jackson's file of any inquiry associated with TrendView, and Jackson offers no evidence to the contrary. Thus only speculation or conjecture could support a connection between the allegedly inaccurate information in Jackson's file and the loss of credit he suffered.

Without evidence connecting the information in his credit file to any pecuniary loss he suffered, Jackson's primary argument for the existence of actual damages appears to be that Experian's response to his dispute letter caused him to suffer emotional distress. Specifically, Jackson contends that Experian's continued reporting of inaccurate information frustrated his ability to enjoy the financial "fresh start" he hoped bankruptcy would provide. But the evidence offered in support of this argument is inadequate as well. In FCRA cases like this one, the Seventh Circuit has "maintained a strict standard for a finding of emotional damages because [accounts of emotional distress] are so easy to manufacture." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (internal quotation marks omitted). Where, as in this case, "the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances in reasonable detail; he cannot rely on mere conclusory statements." *Id.* Thus, for example, the Seventh Circuit considered a plaintiff's testimony that she "stress[es], gets tension headaches, and clashes with her fiancé over credit problems" to be "at most, self-serving and conclusory statements" that are insufficient to establish emotional damages. *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 605 (7th Cir. 2006). Similarly, according to the Seventh Circuit, a plaintiff's statement that viewing

adverse credit information was "embarrassing" or that dealing with credit reporting agencies was "mentally and emotionally distressful" is too conclusory to support an emotional damages award. *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834 (2004).

Jackson's description of his purported emotional distress also falls into the category of conclusory testimony. He testified that sleeping was "an issue," he "worried" about finances, he was irritable and agitated, and he had a short temper. Jackson does not specify the nature of his sleep "issues" or identify other physical manifestations of his alleged distress; nor does he elaborate about the extent to which he was worried or agitated. But not only is Jackson's description of his emotional symptoms overly general;[3] he also fails to offer any evidence from which a reasonable jury could find that Experian's reporting of purportedly inaccurate information in its disclosure triggered those symptoms. Indeed, rather than providing an account of how his purported distress was connected to Experian's allegedly inaccurate reporting, Jackson admitted during his deposition that he did not suffer from emotional distress after receiving the (allegedly inaccurate) November 2015 disclosure from Experian. Jackson's description of his alleged emotional damages fails to meet the Seventh Circuit's "strict standard." *Sarver*, 390 at 971.

Jackson maintains, however, that he need not making a showing of actual damages to recover under the FCRA because Experian is liable for statutory damages under the Act. It is true that willful violators of the FCRA are subject to liability for "any actual damages sustained by the consumer as a result of [the violation] *or* damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A) (emphasis

---

[3] The Court notes that Jackson is a practicing psychologist and was thus capable of providing a concrete and detailed account of the emotional harm he suffered.

9

added). Experian argues, however, that Jackson's failure to establish the existence of actual damages precludes him from recovering statutory damages in this particular case. According to Experian, a causal link between the reporting of inaccurate information and some actual harm to the consumer is a necessary element of a section 1681i claim. *See, e.g.*, *Ruffin-Thompkins*, 422 F.3d at 608. Experian argues that without evidence of such a link, Jackson cannot establish a violation of 1681i, let alone a willful violation, and thus statutory damages are not available to him. The Seventh Circuit's opinion in *Ruffin-Thompkins* appears to support Experian's position. *See id.* at 610 (discussing failure of section 1681i claim for lack of "actual damages" evidence and agreeing with district court that because plaintiff's FCRA claim fails, "it follows, *a fortiori*, that the Court must deny her claim for punitive or statutory damages"); *see also Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 302 (N.D. Ill. 2005) (concluding that plaintiff does not have to prove actual injury to recover statutory damages under the FCRA in general but distinguishing cases brought under section 1681i where plaintiff must prove actual damages to state a cause of action).

But even if a plaintiff were not required to prove actual damages to recover statutory damages for a section 1681i claim, statutory damages would still be unavailable to Jackson in this case. It is undisputed that statutory damages may be awarded only for *willful* violations of the FCRA. 15 U.S.C. § 1681n(a)(1)(A). Willful violations can include those violations that demonstrate "reckless disregard" of a company's FCRA obligations. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). A company does not act in reckless disregard of the FCRA, however, unless the action it takes "is not only a violation under a reasonable reading of the statute's terms, but

shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

In this case, Jackson has presented no evidence that Experian acted in reckless disregard of its FCRA obligations or otherwise willfully violated the Act. The FCRA provision that Jackson accuses Experian of violating requires a consumer reporting agency to conduct a reasonable reinvestigation, in response to a consumer dispute, to determine whether "the disputed information is inaccurate and record the current status of the dispute information, or delete the item [of disputed information] from the [consumer's] file." 15 U.S.C. § 1681i(a)(1)(A). Jackson's dispute letter asked Experian to update the Ocwen, RCS, and OneWest accounts in his consumer file to "report a current balance and a monthly payment of '0'" and to reflect "an accurate payment history on the accounts that ha[d] been discharged in [his] bankruptcy case." In response, Experian did as Jackson requested and updated his accounts to ensure that his file displayed a current balance and monthly payment of "0" for those accounts and reflected an accurate payment history. Jackson's letter made no mention of the Account History section of his file, which is the section he now alleges was inaccurate. It is questionable, under a reasonable reading of section 1681i, whether Experian had any obligation to correct alleged inaccuracies that were not identified in a consumer's dispute letter. That aside, no reasonable factfinder could conclude that Experian acted in reckless disregard of its obligations under section 1681i by correcting only the information Jackson identified. Jackson contends that if Experian had different policies in place, it would also have corrected his Account History section. But if Experian had any obligation under the FCRA to enact policies that would ensure it corrected

11

undisputed-but-still-inaccurate information in a consumer's file, its failure to do so would evince a careless reading of the statute at worst. The Court already determined above that actual damages are not available to Jackson in this case. Because there is no evidence that Experian willfully violated the FCRA, Jackson cannot recover statutory damages either.

## Conclusion

For the reasons stated above, the Court grants Experian's motion for summary judgment [dkt. no. 87] and denies Jackson's motion for summary judgment [dkt. no. 90]. The Court directs the Clerk to enter judgment in favor of defendant and against plaintiff.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 16, 2017